**Judy K. BLANTON, Plaintiff,**

v.

**JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Defendant.**

**Civ. A. No. 3–4264–D.**

United States District Court, N. D. Texas, Dallas Division.

Oct. 20, 1971.

---

Cecil D. Elfenbein, Jack D. Eades, Dallas, for plaintiff.

Hawkins, Golden, George Potts, Dallas, for defendant.

## MEMORANDUM OPINION AND ORDER SUSTAINING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ROBERT M. HILL, District Judge.

This is a suit under a life insurance policy issued by John Hancock Life Insurance Company to the husband of Judy K. Blanton. John Hancock has moved for summary judgment. The motion is sustained.

The policy in question was dated October 1, 1969. Premiums were due on the first day of each month beginning with November.

On December 19, 1969, the insured delivered a check to the defendant in the amount of a monthly premium. The check was credited in payment of the November 1, 1969, premium.

On March 1, 1970, the insured tendered a check in an amount equal to a monthly premium. The defendant did not negotiate this check.

On March 23, 1970, the insured tendered a check in an amount less than the monthly premium. The defendant did not negotiate this check.

On April 11, 1970, the insured was accidentally killed. The insurance policy provided that the company would pay the amount of the policy if no premiums were more than thirty-one days overdue.

There is evidence that John Hancock's agent, Harris, advised the insured in March of 1970 that the checks tendered in March by the insured would be applied in payment of the December 1, 1969, and January 1, 1970, premium payments. Further, there is evidence that on April 8, 1970, Harris and the insured agreed to meet on April 11. Harris told the insured that his policy would remain in effect until that date, at which time the parties planned to determine the amount of past due premiums. The insured was killed on that date and the meeting never took place.

John Hancock has denied plaintiff's claim for the amount of the policy for nonpayment of premiums. Plaintiff asserts two theories.

### I. *Waiver and Estoppel*

Plaintiff first claims either that defendant has waived timely payment of premiums or that defendant is estopped from asserting plaintiff's failure to timely payment of premiums. Specifically, plaintiff contends that defendant's custom of accepting premium payments beyond the grace period of thirty-one days without requiring certain reinstatement procedures has resulted in a waiver of timely payment.[1] The plaintiff may not prevail under this theory.

Waiver by custom and estoppel are the same concept. Southland Life Insurance Company v. Lawson, 137 Tex. 399, 153 S.W.2d 953 (1941). An insurance company's custom of accepting premium payments beyond the grace period does not constitute a waiver of the provisions of the forfeiture clause for nonpayment of premiums, and a company who accepts late premiums does not waive the forfeiture clause in any future situation. Great Southern Life Insurance Company v. Peddy, 139 Tex. 245, 162 S.W.2d 652 (1942). As a matter of law, the insurance company in this case did not waive forfeiture of the policy for nonpayment of premiums.

Further, it seems that John Hancock did not, in fact, waive timely payment. The fact that the company failed to negotiate the two checks tendered on March 1 and 23 indicates that the company felt that the policy had lapsed for timely payment of premiums.

Whether or not the company waived timely payment, however, it would still be impossible for plaintiff to recover under the policy. Had the

1. These procedures include written application for reinstatement, evidence of insurability, and payment of interest on overdue premiums.

March checks been both in the proper amount and negotiated, they would have been applied to payment of the premiums due on December 1, 1969, and on January 1, 1970. Since the premium due on February 1, 1970, was never paid, the thirty-one day grace period would have begun running on that date and would have expired on March 3, 1970. The insured was killed on April 11, 1970, 38 days after the grace period expired. Therefore the insured could not have been covered by the policy.

## II. *Actual and Apparent Authority*

To extend coverage until the date of the insured's death, plaintiff also claims that John Hancock's agent Harris had actual or apparent authority to tell the insured that his policy would not lapse for nonpayment until after the amount of overdue premiums was determined.

### A. *Actual Authority*

The insurance contract clearly provided:

> Only the President, a Vice President, the Secretary, or an Assistant Secretary of the Company has authority to waive or change in any respect any of the conditions or provisions of the policy, or to extend credit or to make any agreement for the Company.

Further, Article 21.04 of the Insurance Code of the State of Texas, V.A.T.S., states in applicable part:

> Any person who shall solicit an application for insurance upon the life of another . . . . . shall not have the power to waive, change or alter any of the terms or conditions of the application or policy.

■ The Court feels that both these provisions bar the plaintiff from asserting that Harris had actual authority to alter the terms of the contract, and that plaintiff is barred from asserting actual authority as a matter of law. Sanchez v. American National Insurance Co., 40 S.W.2d 240 (Tex.Civ.App.1931)

### B. *Apparent Authority*

■ The doctrine of apparent authority is applicable when a principal places an agent in such a situation that one of ordinary prudence would reasonably be led to believe that the agent has authority to perform the acts he is performing. There are several reasons why the doctrine of implied authority is not applicable here.

■ First, it is essential that the *principal* act affirmatively to clothe the agent with such power; it is not sufficient that the agent alone represent such authority. There is no evidence that John Hancock ever acted in any way to give plaintiff the impression that Harris had the power to extend the life of the insurance policy months beyond the grace period. The fact that the company itself chose to accept late premiums did not clothe the agent with any apparent authority to extend the time of payment. Only the acceptance of the company, not the representations of a soliciting agent, could make late tenders effective.

■■ Further, plaintiff is bound by the terms of both art. 21.04 and of the policy. Where an agent's authority is expressly limited, either by statute or by the terms of an insurance policy, the insured is on notice of such limitation and cannot rely on an agent's representations to the contrary. Such constructive notice is deemed effective to protect the principal from liability to a third party for any such unauthorized act. 2 Tex. Jur. 2nd, Agency § 49. Universal Life Ins. Co. v. Warren, 126 S.W.2d 796 (Tex.Civ.App.1939).

The Court therefore holds that agent Harris had neither express nor implied authority to extend the life of the policy beyond the terms of the policy.

It being the opinion of the Court that there is no genuine issue as to any material fact, and that the defendant is entitled to judgment as a matter of law, it is ordered that defendant's motion for summary judgment is sustained.