AMERICAN NATIONAL LIFE INSURANCE COMPANY OF TEXAS, Appellant,

v.

Viola P. MONTGOMERY, Appellee.

No. 09 82 022 CV.

Court of Appeals of Texas, Beaumont.

Aug. 19, 1982.

Rehearing Denied Sept. 16, 1982.

Lawrence L. Germer, Mark Beaman, Orgain, Bell & Tucker, Beaumont, for appellant.

Randolph L. Delay, Corpus Christi, for appellee.

## OPINION

KEITH, Justice.

Defendant below appeals from an adverse judgment which followed a jury verdict. Plaintiff recovered judgment for actual damages trebled, plus attorney's fees, in her suit based upon misrepresentations of a local soliciting agent for the life insurance company. Suit was maintained under the provisions of the Deceptive Trade Practices-Consumer Protection Act, *Tex.Bus. & Comm.Code Ann. § 17.50 (Supp.1982),* and *Tex.Ins.Code Ann. art. 21.21 (1981).*

Although presented in many different forms, there are only two principal questions:

1. Is a life insurance company liable for oral misrepresentations made by its soliciting agent as to the conditions under which the company will issue a policy of life insurance pursuant to a written application received by the agent?

2. Do the oral misrepresentations made by its soliciting agent as to the conditions under which the company will issue a policy of life insurance pursuant to a written application create liability under the Deceptive Trade Practices Act upon the company?

For the reasons set out hereinafter, we answer each of the questions in the negative.

At all times material to this suit, Terry Cauthen was a soliciting agent for defendant, a domestic life insurance Company. On May 23, 1979, he contacted Donald L. Montgomery and wife, Viola P. Montgomery, regarding the purchase of a policy of life insurance to provide for the payment of a mortgage upon their new home in the event of the untimely death of Mr. Montgomery. The parties agreed upon a ten-year decreasing term policy of life insurance upon Montgomery's life. An application for a policy was filled out and signed by Montgomery and he also signed the conditional receipt form prepared by Cauthen. Mrs. Montgomery's check for the first premium, $111.15, was delivered to Cauthen and cashed by defendant on June 6.

Cauthen sent the application and the check to defendant but heard nothing for some time from his company until he was asked to expedite the medical report of Montgomery's physician as to the applicant's health. This date was not fixed firmly, Cauthen's estimate being the "end of June, first of July." Cauthen telephoned Mrs. Montgomery to enlist her aid in securing the report. She agreed to help but no report was sent by the physician.

Even after the death of Mr. Montgomery on July 21, 1979, Cauthen thought that there was coverage since he had not received notice to the contrary.[1] He so told

Mrs. Montgomery and her son who advised him of the death of Mr. Montgomery. Cauthen's attempt to deliver defendant's refund check (dated August 9) accompanied by a release, was rejected by plaintiff.

Dr. Gerald Lange, Mr. Montgomery's physician, testified by deposition saying that Montgomery had high blood pressure when examined several months before the application for insurance was signed but that it had been controlled by medications. He was not asked nor did he explain why he did not respond to defendant's request for medical information which was found in his file.

Two special issues as to misrepresentations[2] made by Cauthen were answered in favor of plaintiff, and her actual damages, submitted without an accompanying instruction, were fixed at the sum of $40,000. After overruling defendant's motion for judgment non obstante veredicto, the Court entered judgment for the plaintiff which trebled the damage finding and included attorney's fees.

 Defendant challenges the legal and factual sufficiency of the evidence to support the judgment. Since both types of points are before us, we must address the no evidence points first. *Glover v. Texas General Indemnity Co.,* 619 S.W.2d 400, 401 (Tex.1981). And, in passing upon the "no evidence" points, we must review the record in the light most favorable to the jury findings, considering only the evidence and inferences which support them and rejecting the evidence and inferences contrary to the findings. *Williams v. Bennett,* 610 S.W.2d 144, 145 (Tex.1980).

 Defendant presents two basic contentions supporting its position that the oral

---

1. Later, and after the death of Mr. Montgomery, Cauthen attempted to deliver to Mrs. Montgomery a notice dated July 11, 1979, advising that "[b]ecause certain information requested has not been received," no policy would be issued, and advising that "there is no insurance coverage under the conditional receipt". This instrument was contained in an envelope which bore a private postage meter date of July 24, 1979.

2. Cauthen's statements and representations were the producing cause of plaintiff's damage in that he: (a) made a statement representing "the terms of any policy to be issued or the benefits or advantages promised thereby" which were relied upon by plaintiff and (b) represented that an agreement conferred rights or remedies which it did not have and which were relied upon by plaintiff.

representations of Cauthen will not support the judgment. The first is that the evidence "conclusively established that Terry Cauthen was an independent contractor . . . [and] [t]here is absolutely no evidence in the record which negates Mr. Cauthen's status as an independent contractor . . . ."

The factual basis for this contention is firmly established since the written contract was admitted without objection and no one offered any evidence at variance with the instrument.[3] The written agreement authorized Cauthen "to solicit applications" for insurance on behalf of defendant, and contained a lengthy paragraph specifically establishing the independent contractor relationship.[4] Another provision prohibited the agent from making "any alterations, modifications or endorsements or otherwise alter the Company's obligations thereunder . . . ."

Defendant asserts that the provisions of the contract, unchallenged under this record, are valid and binding under the authority of *Newspapers, Inc. v. Love,* 380 S.W.2d 582, 590 (Tex.1964). For additional authorities in accord with the holding in *Love,* supra, see those cited in *Bogard v. Highlands Ins. Co.,* 601 S.W.2d 957 (Tex.Civ.App. —El Paso 1980, no writ). The written contract between defendant and Cauthen negated the existence of the master-servant relationship and, there being no evidence showing a different relationship, established Cauthen's status as an independent contractor. *Continental Insurance Co. v. Wolford,* 526 S.W.2d 539, 542 (Tex.1975).

Soliciting agents for life insurance companies have been held to be independent contractors by several authoritative cases. See, e.g., *American National Insurance Co. v. Denke,* 128 Tex. 229, 95 S.W.2d 370, 376 (1936); *Burt v. Lochausen,* 151 Tex. 289, 249 S.W.2d 194, 196 (1952); *International*

*Security Life Ins. Co. v. Henderson,* 455 S.W.2d 200, 201 (Tex.1970); *Webb v. Justice Life Ins. Co.,* 563 S.W.2d 347, 348 (Tex.Civ. App.—Dallas 1978, no writ).

It is a general rule that a contractee is not answerable for the acts of an independent contractor. *Siratt v. City of River Oaks,* 305 S.W.2d 207, 209 (Tex.Civ.App.— Fort Worth, 1957, writ ref'd). See also, *Abalos v. Oil Development Co. of Texas,* 544 S.W.2d 627, 631 (Tex.1976); *Woodard v. Southwest States, Inc.,* 384 S.W.2d 674, 675 (Tex.1964); *J.A. Robinson Sons, Inc. v. Ellis,* 412 S.W.2d 728, 735 (Tex.Civ.App.— Amarillo 1967, writ ref'd n.r.e.); *H.M.R. Construction Co. v. Wolco of Houston, Inc.,* 422 S.W.2d 214, 216 (Tex.Civ.App.—Houston [14th Dist.] 1967, writ ref'd n.r.e.).

Plaintiff does not address defendant's contention that Cauthen's independent contractor status insulates it from the vicarious liability imposed upon defendant under D.T.P.A. Thus, plaintiff has failed to recognize the application of the fundamental rule that every plaintiff in a tort action must prove the existence of a duty and a violation of that duty as a prerequisite to recovery. *Abalos v. Oil Development Co. of Texas,* supra (544 S.W.2d at 631). Under the authorities cited, we sustain defendant's first point of error that there was no evidence that Cauthen was an agent whose misrepresentations could be imputed to defendant so as to create liability under D.T. P.A.

Defendant also contends that it is not liable, again as a matter of law, because Cauthen was a soliciting agent without authority to make representations—or misrepresentations—as to the effective date of coverage. The evidence is undisputed that Cauthen was a soliciting agent as that term is defined in *Tex.Ins.Code Ann. art. 21.04*

---

3. Plaintiff has *not* contended that the written contract was intended as a subterfuge or that it had been abandoned by them. See and cf. *Newspapers, Inc. v. Love,* 380 S.W.2d 582, 584 (Tex.1964).

4. Paragraph 4 reads in part: "The Agent's relationship with the Company shall be that of

independent contractor, and nothing in this Contract shall be construed as creating the relationship of employer and employee. The Agent shall be free to exercise his independent judgment as to the persons from whom applications are solicited and the time, place and manner of solicitation. . . ."

*(1981);* [5] and, under the statute, he was without power to "waive, change or alter any of the terms or conditions of the application or policy." See and cf. *Blanton v. John Hancock Mutual Life Ins. Co.,* 345 F.Supp. 168, 171 (N.D.Tex.1971), aff'd, 463 F.2d 421 (5th Cir. 1972).

Mr. Montgomery signed the application for the insurance policy twice, the first being on the application itself, while the second signature certified that he had read the front and back of the conditional receipt which had been detached from the application. No one was in position to testify that Mr. Montgomery actually read the conditional receipt form, although he did sign it and the record shows that he was "very careful in his business dealings." The receipt contained this language:

> "Temporary coverage provided herein, if any, shall TERMINATE on the date the policy applied for (or short term insurance, if any) becomes effective or upon the expiration of 45 days from the date of this receipt, whichever date is earlier. . . . No representative of the Company except the President, a Vice President or the Secretary has the authority to waive any provision or condition of this receipt or to alter or amend it in any way."

The receipt was dated May 23, 1979, and Mr. Montgomery died of a coronary occlusion on July 21, 1979, fifty-nine days after the issuance of the temporary receipt, without a policy having issued.

Defendant relies upon language used by the late Justice Denton in *International Security Life Insurance Co. v. Finck,* 496 S.W.2d 544, 546 (Tex.1973):

> "It is the settled law of this State that a soliciting agent of an insurance company has no power or authority to make a

contract on behalf of the company or to waive the terms of the policy." (citations omitted)

The fraudulent representations made by the soliciting agent in the *Finck Case,* supra, upon which punitive damages were based, were found to be "beyond Cochrell's authority to make." (Id.) The same rule must be applied in this case unless a contrary result is dictated by the cases upon which plaintiff relies, the leading one being *Royal Globe Ins. Co. v. Bar Consultants, Inc.,* 577 S.W.2d 688 (Tex.1979). Plaintiff also cites *McNeill v. McDavid Insurance Agency,* 594 S.W.2d 198 (Tex.Civ.App.— Fort Worth 1980, no writ).[6]

It is well to point out that while our case involves a soliciting agent, it was a local recording agent whose acts were found to create liability in *Royal Globe.* There is a vast difference in the statutory authority conferred on the two types of agents. As noted earlier, a soliciting agent has very limited authority. On the other hand, as noted by Justice Spears in *Royal Globe,* the authority of the local recording agent is much broader. Such an agent is authorized, under *Tex.Ins.Code Ann. art. 21.09 (1981),* "to write, sign, execute and deliver policies of insurance and to bind companies on insurance risks . . . ."

Indeed, our Supreme Court has held that a recording agent could orally waive a policy provision notwithstanding a policy provision to the contrary. *Home Ins. Co. of New York v. Roberts,* 129 Tex. 178, 100 S.W.2d 91, 93 (1937). It has held that the effect of the statute is to enable the purchaser of insurance to determine "whether the agent is a mere solicitor unauthorized to bind the company [such as Cauthen] or a recording agent [such as Embrey in *Royal Globe* ] with full authority to do so." *New York*

---

5. *Art. 21.04:* "Any person who shall solicit an application for insurance upon the life of another shall in any controversy between the assured and his beneficiary and the company issuing any policy upon such application be regarded as the agent of the company, and not the agent of the insured, *but such agent shall not have the power to waive, change or alter any of the terms or conditions of the application or policy.*" (emphasis supplied)

6. Plaintiff also cites *United Travelers Ins. Co. v. Perkins,* 611 S.W.2d 152 (Tex.Civ.App.—Waco 1981, writ ref'd n.r.e.), commenting, "which Appellee believes to be favorable to its position in this matter." We have read and reread *Perkins* but remain in disagreement with counsel's evaluation of the holding in *Perkins.*

*Fire Ins. Co. v. Reed,* 138 S.W.2d 138, 142 (Tex.Civ.App.—Amarillo 1939, writ ref'd).

■ The authority of the local recording agent is "co-extensive with that of the company insofar as writing insurance is concerned . . . ." *Shaller v. Commercial Standard Ins. Co.,* 158 Tex. 143, 309 S.W.2d 59, 63 (1958), quoted in *State Farm Mutual Automobile Ins. Co. v. Matlock,* 462 S.W.2d 277, 279 (Tex.1970). The agent in *Royal Globe,* supra, was a local recording agent such as those mentioned in the *Roberts, Reed,* and *Matlock* cases. Cauthen, on the other hand, was a soliciting agent such as described in the *Finck, Denke, Lochausen, Henderson,* and *Blanton* cases. Summarizing the distinction: The local recording agent has plenary authority to bind the company; the soliciting agent can only take applications for submission to the company. Representations by one will create liability while the other has no authority even to make representations.

Plaintiff, quoting copiously from *Roberts v. California-Western States Life Ins. Co.,* 470 S.W.2d 719, 724 (Tex.Civ.App.—Amarillo 1971, no writ), argues that Cauthen "had apparent authority to bind Defendant to immediate insurance coverage of Plaintiff." The *Roberts Court* affirmed a judgment non obstante veredicto holding, inter alia, that there was no evidence that the insurer "knowingly permitted agent Oakley to represent to customers that he could by oral promises bind California-Western to an insurance contract before the company accepted the application and issued a policy." (470 S.W.2d at 724) *Roberts* supports defendant's position, not that of the plaintiff.

■ Moreover, we note that the question of Cauthen's authority, if it was a disputed issue of fact, was not submitted to the jury nor did plaintiff seek a determination of that question by either requesting its submission or objecting to its omission. Assuming, arguendo, that there was any evidence of apparent authority authorizing the submission of an issue, plaintiff waived such submission. *Tex.R.Civ.P. 279; Glens Falls Ins. Co. v. Peters,* 386 S.W.2d 529, 531 (Tex.1965), and its progeny.

Summarizing our prior holdings in this case, we sustain defendant's no evidence points No. 1, Cauthen was an independent contractor, and No. 2, that Cauthen was only a soliciting agent unauthorized to do more than solicit applications for insurance. We do not reach defendant's subsidiary points asserting factual insufficiency of the evidence to support the judgment. *Glover v. Texas General Indem. Co.,* supra (619 S.W.2d at 401).

Since plaintiff argues that, notwithstanding Cauthen's lack of authority to act for defendant, it is still liable for any representations he may have made under DTPA, we turn to that contention. In so doing, we note that there is no showing of a legislative intent to amend *Tex.Ins.Code Ann. art. 21.04* by repealing the last phrase thereof or by providing that the soliciting agent would have the same authority which it had conferred upon local recording agents under *Tex.Ins.Code Ann. art. 21.09.*

■ As noted earlier, the courts of this state have repeatedly held that a soliciting agent for a life insurance company cannot bind his principal but can only submit applications for insurance. The present *art. 21.04, Insurance Code,* has been on our statute books since 1909 [7] and has been carried forward without substantial change. Thus, it went through the general revisions of 1911 and 1925, without change, before being codified in 1951, still unchanged. Thus, the Legislature is presumed to have adopted the construction theretofore placed upon such statute. *Marmon v. Mustang Aviation, Inc.,* 430 S.W.2d 182, 187 (Tex.1968), followed in *Allen Sales & Servicenter, Inc. v. Ryan,* 525 S.W.2d 863, 866 (Tex.1975).

■ The broad language of *Art. 21.21, Insurance Code,* and the regulation promulgated pursuant thereto by the Board of Insurance (see *Royal Globe,* supra, 577 S.W.2d at 691, fn. 8) imposing vicarious

---

7. Vernon's historical note following *Art. 21.04,* which was adopted in 1951, reads: "Source: Based on Vernon's Ann.Civ.St. art. 5063 (Acts 1909, p. 192; R.S. 1911, art. 4968), unchanged."

liability upon insurance companies for representations of its local recording agents are entirely consistent with the statute governing the authority of such agents as interpreted by the courts. *Royal Globe* so held. The *Royal Globe Court* did not have before it nor did it make a determination that the last phrase of *Art. 21.04, Insurance Code,* had been amended or repealed. We decline to extend the *Royal Globe* rationale to soliciting agents of life insurance companies under the record now before us.

Having reviewed the record, we answer both of our questions, posed in the forepart of this lengthy opinion, in the negative. Our action renders it unnecessary to consider the remaining points of error brought forward by the defendant and the cross-points of plaintiff are rendered immaterial. It appears that the case was fully developed upon the trial. We now enter our judgment reversing the judgment of the trial court and render judgment that the plaintiff take nothing.

REVERSED and RENDERED.